UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2022 JUN 16 PM 12: 50

| | |
|---|---|
| Mark Saunders,<br>　　　　　　　Plaintiff,<br><br>v.<br><br>Rosalind Picard, Ann MacKay,<br>Kristen Luken, Roger Mark,<br>Thomas DuVol, Harold Jones,<br>Garrett Smith, Daniel Romaine,<br>Anders Brownworth, Carmen Aldinger,<br>Doris Kellom, Beatrice Yankey and the<br>Newton Covenant Church<br>　　　　　　　Defendants. | Civil Action No. 1:21-cv-11240-AK |

## AMENDED COMPLAINT

COMES NOW the Plaintiff, appearing pro se, and for a complaint against Defendants, states and alleges as follows:

### Parties

1.　　Plaintiff is a resident of the city of Watertown, county of Middlesex, Commonwealth of Massachusetts. He resides at 28 Cushman Street, Watertown, Massachusetts 02472. Plaintiff is a member and Ruling Elder of Newton Presbyterian Church (NPC), located at 75 Vernon Street, Newton, Massachusetts 02458.

2.　　Rosalind Picard is a former member of NPC and a former member of the NPC leadership team (session).

3. Ann MacKay is a former member of NPC and a former member of the NPC leadership team (session).

4. Kristen Luken is a former member of NPC and a former member of the NPC leadership team (session).

5. Roger Mark is a former member of NPC and a former member of the NPC leadership team (session).

6. Thomas DeVol is a former member of NPC and a former member of the NPC leadership team (session).

7. Harold Jones is a former member of NPC and a former member of the NPC leadership team (session).

8. Garett Smith is a former member of NPC and a former staff member of the NPC. Smith was a former pastor at NPC, although he is not and never has been ordained in the Presbyterian Church USA (PC(USA)).

9. Daniel Romaine is a former member of NPC and a former member of the NPC leadership team (session).

10. Anders Brownworth is a former member of NPC and a former member of the NPC leadership team (session).

11. Carmen Aldinger is a former member of NPC and a former member of the NPC leadership team (session).

12. Doris Kellom is a former member of NPC and a former member of the NPC leadership team (session).

13. Beatrice Yankey is a former member of NPC and a former member of the NPC leadership team (session).

14. Newton Covenant Church is a church whose office address is 959 Watertown Street, Newton, Massachusetts.

## Jurisdiction and Venue

15. This Court has jurisdiction pursuant to 28 U.S.C. §1331 and §1338(a), and 17 U.S.C. § 101 *et seq*.

16. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to this action occurred in this District and a substantial part of the property that is the subject of this action is situated in this District. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c), because Defendants do business in this district and a substantial part of the unlawful conduct giving rise to the claims occurred in this district. Venue in this district is proper pursuant to 28 U.S.C § 1400(b) because defendants have committed acts of infringement and have a regular and established place of business in this district.

## Nature of the Case

17. After the 2011 adoption of Amendment 10-A of the PC(USA) Constitution, relaxing its standards regarding same-sex marriage and gay and lesbian ordination, the session of Newton Presbyterian Church (NPC) embarked on a mission to separate from the PC(USA). This resulted in a schism within NPC, with some members aligning with the session and others aligning with the PC(USA)

18. In response, the overseeing governance body of PC(USA) churches in the Boston area,

the Presbytery of Boston (POB), received a letter from a church member requesting that an Administrative Commission (AC) be formed. The letter outlined several allegations regarding actions by the leadership and requested that the AC assume "Original Jurisdiction" of the church. (Original jurisdiction allows an AC to assume the full power of a session in any situation in which it determines that a session cannot properly exercise its authority.) The POB determined that there was enough merit to the allegations to assign an AC to investigate. At its November 14, 2016 meeting, the POB voted to establish an AC. Plaintiff had planned to read a document he had prepared that was in support of the establishment of an AC, but decided to withhold any statement after NPC session members offered no objection to an AC.

19. The AC first met with the leadership team in December, 2016. Plaintiff was present at this meeting, as a visitor. At that time, the session was informed by the AC that their formation was in response to a letter that had been received by the Presbytery requesting the establishment of an AC. They were also informed that the letter and its author were protected, and that neither the letter nor the author's name would be released. Defendant Picard immediately queried Plaintiff as to who wrote the letter. Picard stated that she assumed Plaintiff had written the letter. (Plaintiff did not provide any information regarding the letter or its author.)

20. On January 12, 2017, the AC assumed Original Jurisdiction, disbanded the session, and took control of the church as the new session. Further, the AC issued a determination that members of NPC aligning with the PC(USA) constituted the "True Church".

21 On January 15, 2017, the dissolved session conducted an unauthorized vote of the congregation to leave the PC(USA), form a new church, and join the Evangelical Covenant Church (ECC). As a result, members of NPC aligning with the PC(USA) were barred from the

property. Defendants renamed the church Newton Covenant Church (NCC), removed NPC signage, and replaced the same with NCC signage.

22. On March 17, 2017, a lawsuit was filed against NCC and its leadership team. (COMMONWEALTH OF MASSACHUSETTS SUFFOLK, ss. SUPERIOR COURT SUCV2017-0804-BLS, NEWTON PRESBYTERIAN CHURCH and THE PRESBYTERY OF BOSTON Plaintiffs vs. GARRETT SMITH, et al. Defendants).

23. In November 2017, partial summary judgment was rendered by the court and an order was issued awarding NPC with the church building and property. NCC was ordered to vacate the premises. NPC leadership and members of the AC took possession of the property on February 15, 2018, by court order. Plaintiff represented the NPC session at the exchange.

24. Plaintiff began work for NPC immediately, as he was intimately familiar with the NPC property and had experience in engineering operations and project management. Among other activities, he reviewed and catalogued historical documents and files, some of which were to be provided to counsel in the ongoing lawsuit with NCC.

25. During this period, Kathy Barnes, a Ruling Elder at NPC who had been the sole member of the former session who opposed the motion to split from the PC(USA), informed Plaintiff that the former session had obtained a document they referred to as the "Saunders Letter". She asserted that the former session had secretly used the document to aid in their efforts to leave the PC(USA) while retaining possession of the church building and property, and did not want the POB to be aware that said "Saunders Letter" had been in their possession. Barnes and the rest of the former session were under the belief that this was the letter to which the AC had referred at the December, 2016 session meeting. Plaintiff assumed that the former session had somehow

obtained the letter requesting the formation of an AC, which was by PC(USA) rule, private and confidential.

26.  In the summer of 2018, during a conversation with attorney Kathryn Smith of Ropes & Gray LLP regarding documents and files Plaintiff had unearthed at NPC that were germane to the lawsuit against NCC, he inquired as to whether Defendants had produced the "Saunders Letter" they had apparently acquired. Attorney Smith informed Plaintiff that the defendants in that case had not produced the document under discovery, but that current NPC Elder Barnes had provided a copy she had been given while on the former session.

27.  On August 7, 2018, Plaintiff obtained a copy of the document he had authored for his own personal use, but that had been procured, copied, and distributed by Defendants without his prior knowledge or consent. (See EXHIBIT A)

28.  Upon reviewing the document, Plaintiff learned that although the document had been construed to be the "letter" requesting an AC, they had obtained the wrong document. If fact, it was not a letter at all. It was a document created by Plaintiff to use in making a statement in favor of the AC if necessary, but that had never been read aloud, published, or distributed in any form or fashion. This document is the sole intellectual property of Plaintiff, and is copyrighted. (Copyright No. TXu002186544  Title: IN CONSIDERATION OF THE ESTABLISHMENT OF AN ADMINISTRATIVE COMMISSION TO INVESTIGATE SESSION IMPROPRIETIES AT NEWTON PRESBYTERIAN CHURCH.)

29.  Plaintiff expended an extraordinary amount of time and energy in preparing the document Defendants obtained and used without his knowledge or consent. This included working with the POB, co-forming and leading meetings of a committee of NPC congregants opposed to Defendants' determination and efforts to leave the denomination, and attending "town hall"

Case 1:21-cv-11240-AK   Document 12   Filed 06/16/22   Page 7 of 13

meetings conducted by Defendants, Defendants "pitch" meetings to persuade members to leave the PC(USA), and meetings of the former session before they were disbanded. Plaintiff also had to research PC(USA) Constitutional law, interview individuals on both sides of issue, and collect and review information regarding church membership, attendance, and session meeting records. He never intended the document to be egregiously distributed and used by Defendants to aid them in their efforts to leave the PC(USA), commandeer the NPC building, property, assets, and income, and ban PC(USA) aligned members from attending the church or accessing the building.

## First Claim for relief

## Copyright Infringement

30. For a first claim of relief against Defendant, Plaintiff adopts and incorporates by reference herein the allegations contained in Paragraphs 1 through 29, inclusive of this complaint, and further states and alleges as follows:

31. Defendants used Plaintiff's work as a tool in their unlawful occupation and control of the property and funds of Newton Presbyterian Church. The document was used as a guide to circumnavigate the infractions that were occurring and aid them in their mission to leave the PC(USA) and be awarded the NPC building and property at 75 Vernon Street, Newton, Massachusetts.

32. Defendants used Plaintiff's document to aid in preparing a defense in the Newton Presbyterian Church et al. v Garrett Smith et al. lawsuit. During this time, not only did Defendants occupy the church and its property rent free for approximately 13 months, they accessed and used the funds of NPC. When they left the church under court order, they sent several unpaid utility bills to the NPC office marked "Not paid per legal advice". Defendant also failed to maintain the building, causing the heating system to fail. This resulted in multiple burst

pipes, water damage, loss of bathroom use, and other costly damages. All the while, Defendants collected rent from several tenants, including a nursery school for which they failed to maintain legal heating requirements. Thus, Defendant NCC was unjustly enriched during the unlawful occupation. In addition, at the close of the lawsuit, NPC financial secretary Kathy Barnes informed the session that the amount of unrecovered NPC funds accessed and used by NCC was in excess of six figures.

33. Defendants unlawfully copied, distributed, and benefitted from their use of Plaintiff's private, unpublished literary work. As the leadership team of the newly formed Newton Covenant Church, the church also benefitted from these violations.

34. Defendants failed to compensate Plaintiff for the unlawful distribution and use of his intellectual property. Under the provisions of 17 U.S.C. § 201(a), 17 U.S.C. § 102(a), 17 U.S.C. § 103, and 17 U.S.C. 106, Plaintiff holds the right to all works for which no remuneration has been made.

35. Defendant knowingly and willfully distributed a copyrighted work for which no remuneration was made to Plaintiff, without Plaintiff's prior knowledge or consent. This is in violation of 17 U.S.C. § 501(a).

36. Plaintiff asserts his rights under 17 U.S.C. § 501(b).

37. Defendant is subject to, and Plaintiff seeks relief under, the provisions of 17 U.S.C. § 502, 17 U.S.C. § 503(a), 17 U.S.C. § 504(a)(b), and 17 U.S.C. § 505.

## Prayer for Relief

**WHEREFORE,** Plaintiff respectfully prays that this Court:

A.      Enter judgment in favor of Plaintiff and against Defendants for compensatory damages, in an amount to be proven at trial;

B.      Enter judgment in favor of Plaintiff and against Defendants for punitive or exemplary damages, in an amount to be determined at trial;

C.      Declare that Defendants' unauthorized conduct violates Plaintiffs' rights under the Federal Copyright Act;

D.      Immediately and permanently enjoining Defendants from copying or republishing any of Plaintiffs' copyrighted works;

E.      Enter judgment in favor of Plaintiff and against Defendants for statutory damages for copyright infringement, in an amount to be determined at trial;

F.      Enter judgment in favor of Plaintiff and against Defendants for actual damages for copyright infringement, in an amount to be determined at trial;

G.      Grant to Plaintiff any attorney's fees he may incur, plus his costs, expert witness fees, disbursements, and pre- and post-judgment interest; and

H.      Grant such other and additional relief as may to this court seem proper.


Respectfully submitted,

/s/ Mark Saunders

Mark Saunders
28 Cushman Street
Watertown, Massachusetts  02472-3704
617-905-7454

DATE: 6-16-22

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES RAISED HEREIN**

# EXHIBIT A

# IN CONSIDERATION OF THE ESTABLISHMENT OF AN ADMINISTRATIVE COMMISSION TO INVESTIGATE SESSION ACTIONS AT NEWTON PRESBYTERIAN CHURCH

I can think of little that is more deplorable than to tear a man from his faith. Yet that is exactly what the session of Newton Presbyterian Church is doing to myself and others. They have shown no regard whatsoever for the true church - that faction that wishes to remain in the PCUSA.

Presbytery did its best to consider the remnant. The Response Team carefully considered ALL viewpoints and decided to recommend a Joint Congregational Witness. This plan would have allowed both the PCUSA and ECC/Highrock to co-exist in the same church. However, Highrock immediately rejected the plan and session quickly followed. In response to an inquiry about this rejection, Highrock pastor Josh Throneburg stated that he knows "how Garrett Smith feels about the PCUSA" and then made it abundantly clear that any PCUSA members wishing to remain at our church must join the ECC or leave. (The ECC is a non-reformed Lutheran based denomination and is not recognized by the PCUSA.)

So session members, pastor Garret Smith, and Highrock pastor Josh Throneburg have openly rejected all those wishing to remain in the PCUSA. A true Christian leader cares for his ENTIRE flock.

It must be stated that Garrett Smith is not Presbyterian and has rejected Presbytery's conditions for ordination into the PCUSA. He and his wife Nici openly promote the move to the ECC and Highrock while denouncing the recently-formed NPC Congregants Committee and those wishing to remain in the PCUSA. Nici Smith recently told committee co-chair Ken MacDonald that he was dividing the church. Garrett Smith addressed session and said that the congregants committee was having a negative effect on the church. This was shortly before session's vote as to whether to recognize the committee. (Session had informed us that without their recognition and approval, we could not even meet at the church. **Think about that - Presbyterian members who cannot meet at their church.** As Presbyterians, we had to have a mission statement, a liaison appointed by session, and to change our name to one approved by session. So we chose to withdraw our request for "recognition" as Presbyterian congregants. This is how difficult it is right now to be a Presbyterian at NPC.)

Session is little more than a non-Presbyterian oligarchy run by a small group of families via the interchangeability of husbands and wives in order to skirt session term limits. (The nominating committee only considered persons with anti-PCUSA positions for recent installation on session, even recruiting an anti-PCUSA member who had previously resigned from session.)

They have terminated the employment of the ONLY Presbyterian ordained pastor at the church, yet have kept three people on the music staff for a congregation that has recently fallen to 66 attendees, one fourth of what it was just a few years ago. They have voted to "recommend" that the Pastoral Nominating Committee be put on hold. The Pastoral Nominating Committee is not a committee of session, but a congregational committee. They cannot put themselves on hold without a vote of the congregation. Session has conveniently canceled the fall congregational meeting, so there will be no input from the congregation regarding this. The PNC (which by the way, comprises two spouses of anti-PCUSA session members) had little choice but to oblige session's request, as session has voted that non-Presbyterian pastors Garrett Smith and Josh Throneburg will lead the new church. The repeated recommendations of congregants that denominational discernment wait until after a new PCUSA pastor

is installed have been rejected.

They have effectively abolished the open session polity of the church by voting that Presbyterian visitors cannot speak to session, while non-Presbyterian staff can attend and address session at will. We are silenced at rarely held congregational meetings and are not given time to address congregants with any position in opposition to the ECC/Highrock initiative. Yet session itself has embarked on an aggressive mission of its own to train small group leaders to pitch Highrock to their groups and assigned session members to call congregants and get them to accept the move to ECC/Highrock or leave NPC. They have published a fictitious "Frequently Asked Questions" document that doesn't even contain the smallest kernel of truth in some of its answers.

And after their ECO option was rejected by the congregation, session chose to try to fool us by stating that the ECC is less conservative in its tenets and thus a better option for those with more liberal viewpoints. This is false, and recently came to light when a congregant let Highrock pastor Throneburg know of session's claims that ECC/Highrock was more open in their views toward gays. Throneburg shot back that homosexuals could not be ordained or married in the ECC denomination and that he did not see this changing anytime soon. So much to their dismay, session had been "oughted" in their lie. (ECC leader Howard Burgoyne reiterated ECC's anti-gay position on October 30th.)

Session holds secret, unannounced meetings with no production of minutes, sometimes with and often without a moderator. Their claim is that if there is no vote it is not a session meeting. (They then take any necessary "housekeeping vote" later at their regular meetings.) The Book of Order has no requirement that a vote must be taken to make it a session meeting. If the ruling elders gather to discuss and make decisions regarding the church, it is a session meeting. They will claim "executive session" and tell us that congregants are not allowed to know of any discussion or decisions made in these meetings. These meetings even violate the Book of Order requirements for a Closed Session meeting: announcement beforehand, specific reasons for holding such a meeting, production and release of minutes, etc. And although Presbyterian congregants are disallowed (and unaware of the meeting), Highrock and ECC leaders are invited.

Session has misappropriated funds to the point of being the only group at the church that is over budget, spending thousands and thousands wildly on legal fees for the battle they anticipate, putting the church further and further into the red. They simply don't care. ECC will provide the money and jobs they desire. *"You cannot serve God and mammon."*

And by the way, they are planning to legally fight the "property held in trust" clause of the PCUSA Constitution, yet perfectly willing to accept a similar clause in the ECC constitution.

Session sees anyone in disagreement with their anti-PCUSA mission as not part of their body. Session members have referred to Presbytery teaching elders as heretics and the PCUSA (and its members) as "not Christian", all with the full backing of other session members. You cannot insult me more than to tell me that I am not Christian. If my session brothers and sisters wish to leave NPC for the ECC and Highrock, I wish them well. Because unlike them, I fully acknowledge that they are Christians. *"The eye cannot say to the hand, I don't need you."* (Even Paul and Barnabas disagreed. But they fully understood that they were both still Christians.)

And most recently, session has opted to leave any discussion of Highrock out of their plans to leave the

PCUSA. They decided at their last session meeting (the last one that we know about) to only focus on the ECC move, feeling that the congregation will more easily be swayed into changing denominations than to go to any particular church. The elder suggesting this proposal was emphatic that any discussion of Highrock must be squashed with as much vigor as possible. Once the congregation moves to the ECC, then and only then will they bring up the Highrock initiative. Just another attempt at trickery. And brothers and sisters, you know well that where deceit is present, so is evil.

Normally when a session votes to leave the church, the very next step is to request the formation of an Administrative Commission. Session was apprised of this by temporary moderator Jim Singleton immediately after their vote in August. So why haven't they done so? Three reasons:

First, session's and Highrock's lawyers have informed them that courts have been much more likely to award the church property to churches if there are no denominational issues. So session has decided to attack the property issue before requesting an AC to address their plan to leave the PCUSA, somehow hoping to pull the rug over the court's and Presbytery's eyes. After the property issue is settled, they would announce their intention to leave the PCUSA. Deceit, plain and simple.

Second, by delaying the request for the formation of an Administrative Commission, session wishes to have their campaign in full swing to convince congregants to leave the PCUSA. They are even calling congregants one by one to convince them. Small group leaders have been trained, fictitious statements and propaganda released, and the remnant has been silenced.

And the third reason session is holding off on requesting an AC is so that they can clear the rolls of all the members they have chased away from Newton Presbyterian Church. This will make a vote in their favor much more likely to pass, as those congregants who are not attending services in disgust over session's actions will not be able to vote.

In conclusion, I must ask emphatically that you support Presbytery's request and vote in favor of establishing an Administrative Commission. Further and regrettably, on behalf of the true church, I ask that the Administrative Commission establish original jurisdiction, disband session, freeze the assets of the church, reconsider the continued employment of openly anti-PCUSA non-Presbyterian staff, recognize the pro-PCUSA faction as the true church, and grant full control of Newton Presbyterian Church BACK to the true church. It's time to put the Presbyterian back in Newton Presbyterian Church. Thank you.

Mark P. Saunders
Elder
Newton PRESBYTERIAN Church